No. 22-1083, Netflix, Inc. v. DivX, LLC Mr. Fleming Good morning, and may it please the Court, Mark Fleming together with Nora Sue on behalf of Netflix. DivX's 588 patent acknowledges in Column 1 that adaptive bitrate streaming was well known. The Chen reference disclosed it at paragraphs 63 and 64, and the Board itself summarizes it on page 10 of its final written decision. The Board also found that Chen cannot be said to be incompatible with partial frame encryption, and it did not find, and could not have found on this record, that combining ABS with partial frame encryption was somehow beyond the level of ordinary skill. What the Board did was commit the same legal errors that the Court reviewed de novo and corrected in cases like Allergan v. Apotex and others, and it did that in three ways. First of all, the Board considered only Chen's purported claimed invention, namely scalable layers, rather than taking Chen with respect to all it taught, which included the description of ABS by itself without scalable layers. We didn't rely on, and we didn't have to rely on, Chen's scalable layers because DivX does not claim them. And as this Court said in Allergan v. Apotex, failure to consider the appropriate scope of the patent's claimed invention when evaluating reasonable expectation of success is a legal error reviewed without deference, and that's the standard of review here, and we submit the same result should apply. The second... What's the error in the Board's determination with respect to the scope? So what the Board did is it considered, it believed that Netflix had to show a reasonable expectation of success in combining adaptive bit rate streaming with scalable layers with partial frame encryption. The error in scope was DivX's claims do not claim scalable layers. That's not disputed. Chen discloses adaptive bit rate streaming without scalable layers. It then purports to improve on what the state-of-the-art was at that time by saying you could do this with scalable layers, it might make things better. We didn't rely on that claimed invention. But the Board went on and found motivation to combine anyway, right? The Board did find a motivation to combine most definitely, and that's clear throughout the opinion. I assume you'll hear from Mr. Handafar some dispute about that, but I don't think it's possible to read the Board's opinion and find any problem with motivation to combine. They specifically say we sufficiently established it. Their reasoning is solely based on reasonable expectation of success, and I think that's where the legal error is plain because they say there would have been a problem, a skilled artisan in their view, would not have reasonably expected success in combining adaptive bit rate streaming with scalable layers together with Lindahl's partial frame encryption, but of course we don't have to show that. That's a long issue right there about adapting. It sounds to me like we're still in the motivation to combine area and not in looking at reasonable expectation of success. I would certainly agree that the Board's analysis does, even though it recognizes that these are two separate things, there is some lack of clarity in its reasoning, but I think what it clearly was trying to do was make a finding of no reasonable expectation of success. I don't think that could be justified. To be clear, I don't think it could be justified as a motivation finding either, even had the Board purported to make one, which it didn't. And the best authority there is Intel versus Qualcomm from 2021, where Intel relied on the articulation of the prior art in a reference called Bergener, and said Bergener discloses a prior art switch. We want to combine that with other references. And the Board said, well, you can't do that because Bergener criticizes that switch and says it's no good and tries to improve on it. And this Court reversed, saying that's not proper because there's nothing wrong with relying on a prior art patent's description of the state of the prior art on which it purports to improve. And that's exactly what we did with respect to Chen. What about the Chen 924 reference? How do you see that as how the Board handled that? So that is an additional error in our view because Chen 924 we relied on, it's not part of a combination, we're not trying to combine it, but it showed that at the relevant time, skilled artisans were already combining adaptive bit rate streaming with partial frame encryption, and they were doing it in the context of the very file formats that are disposed in Chen and in Lindell. So that is further evidence, not only of a motivation to combine, but also not just of a reasonable expectation of success, but of actual success in combining these features together. The Board didn't address it at all. The only time in the written decision where Chen 924 is addressed is in a recitation of what our arguments were. And then the Board says, this is on page 27 of the appendix, the Board says we need not decide whether a skilled artisan could and would have modified existing file formats to accomplish the goal. But of course the fact that it was already being done, without dispute I might add, when one of the members of the panel asked Divix's counsel at the hearing, what do you take from Chen 924? Counsel said that a skilled artisan may have known that it could do adaptive bit rate streaming with partial frame encryption. That shows not only a motivation to combine, but also a reasonable expectation. The Board's failure to address that, we think, is at the very least a reason for a remand. Can I ask you this question? I guess at the end of the Board's decision, the Board concludes that there was enough doubt to defeat a conclusion of reasonable expectation of success about a skilled artisan's ability to make the necessary modifications to standard file formats used in Chen. I guess I need to understand whether that is a point that applies to the aspect of Chen that you rely on, which is basically a description of background prior art, or whether it applies only to the, let's call it the Chen invention. Because if it applies also to the background art description, teachings as you would say, disclosures of Chen, then my question is why is that not an independent ground for affirmance? I read it as confined to the combination that it was holding us to, we think incorrectly, which is to combine partial frame encryption with scalable layers and forward error correction. What, if anything, about file formats is disclosed in the portions of Chen that you feature? So the first point I'd make in response to this question, Judge Toronto, is the Board did not find, and I don't think it could have found, that a skilled artisan would not actually be able to make these modifications. And that paragraph on page 27 is very careful to say we don't need to decide whether it could, but it does address it. And what it says is, let's assume that it is read as saying there's enough doubt about that, that we don't think there would have been a reasonable expectation of success. We don't need to decide definitively whether somebody could have done it. They would have been unsure. So I don't... Sufficiently unsure, don't argue about the standard of reasonable expectation. Sufficiently unsure to be more than a mere possibility. I mean, I do think that is relevant, because the Board has not made a finding that a skilled artisan couldn't have done it. So I think that that legal point is there, and I don't want to be seen to not address it. But I'll address the question, which is what's the state of the record on that? So Lindahl, which is the reference we rely on for partial frame encryption, discusses implementing it in the MPEG-4 format, and our expert disclosed that and explained that. So does Chan 924. It talks about using what it calls selective encryption in the MPEG-2 TS format. And these are the very same types of formats that Chan, the lead reference, discloses. They all derive from the ISO base media file format, and they're all being used potentially together. And our expert, Dr. McDaniel, explained this at Appendix 6679, paragraph 5 of his reply report. And Chan itself says it in paragraph 119, which is on 5441 of the appendix. Chan says the 3GPP file format or any other file based on the ISO base media file format, such as MP4 or 3GPP2, may be used as the container format for HTTP streaming and the following features. Both sides' experts admitted that undergraduates and graduate students had designed their own file formats to say nothing of being able to modify the ones that existed, and that's because these are meant to be extensible. They are meant to be modified by skilled artisans who use them, and DIVX has never offered any response to that. So we think... I notice there are two different words, extensible and modified or modifiable. I think you're treating those as synonymous. Is it correct that they're synonymous, or does extensible mean only some subset of modifications? No, I think generally... The question is whether the modification that would be needed to do the partial encryption, which is probably itself only one subset of selective encryption, would be something that would put off a skilled artisan in his or her expectation of succeeding. So that is not... I think already that goes beyond the finding that the board has, and I don't think there's any... They don't cite any evidence for that proposition. We cited Dr. McDaniel's reply report, for which there is no contrary evidence provided by DIVX. We cited a prior reference called Stockhammer, and this is on 5544 and 5545, which describes the base media file format as a flexible, extensible format that is used as the basis for other file formats, such as 3GPP. It was also the basis for MP4, which Dr. McDaniel references in footnote 1 of his reply report 6679. Can I switch topics back to you? Of course. Your basic argument. The board has a sentence or two, maybe, that says... Of course there was some motivation to combine reference Chen, reference Lindow, and whatever the third one is, which doesn't play any role in our debate right now. That seems to me at a pretty high level of generality. Why would one not read the board to say something like the following? Your combination proposes basically ignoring vast amounts of Chen and relying just on a little bit of background description of the prior art in Chen. Part of your task as a challenger is to provide a reason a skilled artisan would start where you're starting. We don't actually think you've established that because somebody picking up Chen would not be motivated to ignore, I don't know, is it literally hundreds of columns? But in any event, to... Or if it's paragraphs, right? Hundreds of paragraphs and just rely on the bit of description at the beginning. Why is that not... So there's a motivation finding, this characterization would be, negative to you, built into the board's decision. Because the board does keep coming back in a way that's not very clear, moving back between reasonable expectation of success and motivation. But part of what the board says is we don't think a skilled artisan would actually shed all of the improved stuff in Chen and just start with that beginning. Thank you for your patience. I'd like to answer first why I don't think that's what the board was doing and second why it would be wrong if that's how the court were to read it. So taking the first point, if one looks at page 17 and then the second full paragraph on that page, the board starts by saying reasonable expectation of success and motivation to combine are different legal concepts. Everyone agrees with that. Although we continue to determine, continuing on from what happened in the decision on institution, that petitioner has sufficiently established that an ordinarily skilled artisan would have had some motivation to combine the teachings, we determine below that petitioner's obviousness showing does not sufficiently demonstrate that a skilled artisan would have had a reasonable expectation of success. And so the first part of that sentence, I don't know what the word sufficiently established can mean other than that we have carried our burden. Right, but the way that I'm, I guess, positing or framing the question is that the issue is not what sufficiently established means. It is what the object, the direct object of that little verbal phrase, sufficiently established is. And one thing could be sufficiently established a motivation to combine the references in general. The relevant thing is to combine the particular portions that you are relying on with, again, let's just call it lindle, the relevant piece of lindle, and that later portions of the board opinion say we don't think a skilled artisan would give up all of this other stuff in Chen to just say we're just using the background art description of Chen. So one more point on this and then I'll move to why I don't think that would be supported in any event. If that were really what the board was doing, one would have expected them to mention motivation to combine at some point before the end of the analysis. But whenever they come back to what their finding actually is, it's always in terms of solely reasonable expectation of success, including at the very end of the discussion on 28 where the board's bottom line says we are not persuaded that one of ordinary skill would have had a reasonable expectation of success in combining. No discussion of motivation. Now, if the court disagrees and thinks that this can be read as a motivation decision, there would still have to be at the very least a vacator and the best authority for that is Intel versus Qualcomm because there you had exactly the same situation. You had a prior art reference, Bergener, which disclosed a switch and criticized it and said this is no good, you have to improve upon it. And the board said, well, based on that, no one would have looked to Bergener for the prior art switch and this court said that's incorrect because you can take the prior art for all that it discloses, including its articulation of the prior art and it's not hundreds of pages or even hundreds of paragraphs. The discussion in Chen of scalable layers starts at, I believe, paragraph 375 out of a 500-paragraph reference. There's a lot of discussion of what we call basic or what you could call adaptive bit rate streaming without scalable layers, including paragraphs 63 and 64, which we relied on in depth and the board actually quotes when summarizing Chen itself on page 10. The fact that adaptive bit rate streaming had gotten to the point by the time of the invention, about the claimed invention, that artisans like Chen were already improving on it in various ways, doesn't mean that prior art adaptive bit rate streaming as it existed suddenly becomes patentable or suddenly becomes unavailable for purposes of an obviousness combination. This court has said that numerous times because a prior art patent is always going to criticize the prior art to some extent and say we think we can do better and here's our improvement. This court has said that does not mean that the reference is combined to its claimed invention. That goes all the way back to In Ray Heck and In Ray Applied Materials and Inland Steel. There are plenty of cases in that area. I don't think the law is disputed. The question is simply did the board comply with the law and in our view we think the answer is clearly no because it required us to combine in our obviousness contention a feature that DIVX itself does not claim to have invented and it's not in its claims. I'm well into my rebuttal time. If the court has further questions I'd be happy to address. Is the Intel Qualcomm case that you rely on one that you cited? Yes, it's in our opening brief. I know that there were several. I was on both of the panels. I wrote one of them but I don't think it's that one, right? It's a different one? There's the 2021 one which we cite let's see, pages 40 and 43 of our opening brief. That's 21F4. F4, 784. Oh, 784. 21F4, 784, 2021. You cited that one? Yes, that's correct. And then there's the 2022 one which we also cite for the different proposition which is that the obviousness combination does not have to be the best or the ideal combination out there. It simply has to be a suitable one and there's no finding by the board that our combination is somehow unsuitable and there's certainly nothing in Chen that suggests that it would be and DIVX has disavowed twice in its red brief any teaching away argument. There's no teaching away finding here. Okay, I will save your rebuttal time. Thank you, Your Honor. Good morning, Your Honors. May I please the court? The fundamental misunderstanding or disagreement with what my friend presented is that we proposed and the board correctly found reasonably found, supported by substantial evidence that there is no disclosure of what petitioner calls a basic APS system without scalability that meets the other condemnations in Chen to then be combined with partial claim encryption. And please allow me to elaborate. If Your Honors look at Chen appendix page number 544 there is an actual background of the invention section in Chen. Petitioner is not relying on any of that. But if Your Honor goes to the next pages, page 5436 starting at paragraph 61 the detailed description of the invention that's where petitioner starts relying on Chen. There is no background streaming in Chen. Just for what it's worth, I went through I think the petition and circled all of the paragraphs in Chen that it relied on and there are a whole bunch of them in the background of the invention. 16, 17, 18, 19, 24, 26. That's my record. Correct. So please allow me to explain what other paragraphs they rely on which are significant. And then it comes in and they talk rather specifically about 63 Is it 63 and 64? Yeah. Which are in the detailed description of the invention but still describing some background stuff. So I'm not quite sure what you mean by the idea that the teachings in Chen that they relied on don't really include this I don't know, plain vanilla background art adaptive bit rate streaming. Understood. So the claim don't just claim some alternate bit rate streams. It's a very detailed claim. It requires a specific structure of those streams. It requires, for example, a top level index file. It requires portions within the file. It requires the system to be able to address those portions specifically. For all of those, petitioner is relying on Chen's system and please allow me to point your honor to the point. And when you say Chen's system, you mean part of the surgically invented system. Correct. So there is no background of the art discussion in Chen that says here's a streaming system with a top level index file with fragments, with segments, with a segment index where the playback device can then request from the transmitter, for example. So for example, if your honors look at appendix page 11056, that's petition page 48, in connection with claim limitation 1K, that's still claim one, they cite Chen paragraph 517. Not background, paragraph 517. Similarly, appendix page 11059, that's petition page 51. There's no doubt that the petition cites a lot of material starting at 61 and forward, although there are large sections where it doesn't. As I say, I went through and circled and there are lots and lots of later paragraphs. So what's the problem with their saying, we told you in the petition, element by element, claim element by claim element, what we're relying on. It's not scalability, it's not forward error correction. So the problem is, they are relying on appendix pages, for example, 1156 and 57, on Chen's, what it calls fragments. They need that fragments for the disclosure of parts of the file in the claim. Chen's fragments are the blocks. So Chen explains, for example, on appendix page 5437, that his fragments are his blocks. Chen's blocks, the board reasonably found, undisputed by their expert. Chen's blocks are invariably, without exception, scalable. There is no disclosure in Chen of a block-based streaming system that is not scalable. Now, going to the next point, I believe your honor, Judge Torento, alluded to this point. What the board really found was, we find that Chen's system that petitioners are relying on is necessarily, without exception, scalable. Patent owner's expert opined on that. Petitioner's expert, even though he submitted a reply declaration, he chose not to dispute this point. So the board reasonably found that Chen's system is necessarily, by design, without exception, scalable, which is what the system that the petitioners are relying upon. The board then found that a person of ordinary skill wouldn't have had a reasonable expectation of success to import partial frame encryption into Chen's system, which is relied upon by petitioner, because that system is necessarily scalable. Right. There's fundamentally, as I take it, no real dispute here that if you had started with a scalable system, the board could say, we had substantial evidence to say, you wouldn't do the partial encryption that's required by the client. Right. So then, the board followed to say, with regards to the motivation is, well, we have a Chen's system that's necessarily a scalable system. If petitioner wants to combine partial frame encryption with a modified Chen, which is not scalable, then they have to show motivation to do that. And then the board went on to say, for example, on page 43 of our brief, which is appendix page 21, the board said, and even if petitioner is correct that ordinary skilled artisans could have implemented aspects of Chen without its central features, i.e. scalability of its general features, petitioner has not demonstrated why, italicized by the board, why they would jettison features that are disclosed as useful. Right. And that's one of the portions of the board's decision that I was discussing earlier, that does, what's the law term? Sounds in motivation. Correct. And if you're honest with you, I've had an honest response. The board followed without explicit saying our line of reasoning, which is Chen's system, by design, is scalable. But petitioner wouldn't be able to combine Chen's system as is with partial frame encryption. So to do that, you would have to remove scalability, FTC, modify the standard file format, do a lot of other stuff. And if petitioner wouldn't have had a motivation to remove all of those stuff from Chen, just so the petitioner could implement partial frame encryption, and the board correctly found that that motivation does not exist. Now, I also want to highlight one other point. What about where the board looks at adding Lindholm and what that combination would do? And then it said it would deteriorate, change performance, and reduce its efficiency. Is that a reasonable expectation? Does that go to the reasonable expectation of success? That goes to both. So the board said. Is that enough? I mean, do you have to show that something's going to work and work well in order to be able to use it as a reference in a combination? Depends on the motivation that petitioner had proposed for that combination. Here, petitioner proposed for its motivation to combine Lindholm and Chen, improve piracy, improve efficiency. When the proposed combination, as the board recently found, actually reduces efficiency, that defeats the very motivation that petitioner proposed for that combination. So here, because the motivation they proposed here. Is that an issue of motivation to combine or reasonable expectation of success? They have primary expectation of success, but to the extent they were arguing that. I mean, the combination succeeded. It just didn't work as well. So doesn't that go to motivation to combine? Wouldn't a person skilling hard not have combined to begin with because it would not lead to greater efficiency but less efficiency? That's a reasonable interpretation of the board. Isn't that errored by the court? No, no, no, no. It's not an efficiency issue. The partial frame encryption, which is a claim imitation, wouldn't have worked altogether in Chen's scalable system. That's the unrebutted expert testimony that we have, which the board also credited. So it's not that partial frame encryption would be less efficient. Partial frame encryption wouldn't work. Then the board went an extra step and said, okay, to the extent petitioner is actually arguing we are starting with Chen's system, we're going to remove scalability, FEC, all of this other stuff from Chen so that we can import partial frame encryption. If that's the petitioner's combination or interpretation, then there is no motivation to make that combination because a position wouldn't be motivated to reduce Chen's efficiency, go over modifying the standard file format and a lot of other stuff just so they could implement partial frame encryption in Chen. Why shouldn't we send this back for there to be a cleaner separation of motivation to combine from reasonable expectation of success and motivation to combine a particular starting point in Chen versus Chen as a whole so that we have a more doctrinally familiar presentation of the analysis? Because the reasonable expectation of success is by itself sufficient to affirm the board's ruling because the scope of disclosure of prior art is a question of fact, which should be affirmed as long as it's supported by substantial evidence. Here, the board found Chen does not disclose background description otherwise, does not disclose a system that is not scalable but is block-based, just doesn't exist. That's the board's factual finding regarding what Chen discloses. And I emphasize that's supported by substantial evidence because our expert opined on it, their expert didn't rebut it, and Chen, as we pointed out in our briefing, has a lot of disclosures that it says. For example... Well, let me say it. So I guess from the beginning, I keep pausing and starting to scratch my head, not just this morning but the very beginning, about the use of the word system. Chen doesn't describe a system. And I keep thinking, well, there's way too much play of possible meanings of that word system. Ordinarily, I think, you would think a complete system, probably even Chen describing his inventive system. And I don't think there's any dispute about that. Their petition contains enough to say we are relying on, and I think the word that the petition uses is teachings, which don't need to be a complete system. And what I don't see the board finding is that there is no disclosure in Chen of the pieces of the ultimate claim system that they want to lead a skilled artisan to, that that would not be disclosed among the teachings of Chen combined with Linda. Well, the board made an express finding that Chen has no embodiment that does not have scalability. Our expert... That's your term, embodiment of his invention. Let me supplement that. Right, undisputed. Our expert opined that scalability is integral to everything disclosed in Chen. Everything disclosed? Every disclosure... Every embodiment of his invention. Not just the invention, but... Which the other side says, that's not the issue. Well, they're relying on the embodiments of the invention. So if I may direct your honor... No, they're relying on teachings in the document. Well, they're relying on a playback device that receives specific file segments, file segment indexes, all of the elements of Chen's system. So what they're saying is we rely on Chen's embodiment, but we're removing the scalable feature of it. That's not really what they should be arguing. But I want to highlight one point, which is... If your honor would go to page 5439 of the appendix, paragraph 101, figure 1, starting from figure 1 of Chen... 5439. Starting from the very figure 1 of Chen, everything disclosed are Chen's embodiments. There is nothing in Chen that says, here is a scalable box system that doesn't have scalability, and now I'm going to add scalability to it. That disclosure doesn't exist in Chen. Everything disclosed, starting from figure 1 on, is overall a scalable system where scalability is built in it, and it needs the scalability to perform various functions. Am I right? Sometimes we have patents in which there's a figure and there's a little parenthetical under the figure that says prior art. None of the figures in Chen... No, no, no. Actually, that's why I'm pointing your honor to page 5439, paragraph 101. One embodiment of the invention is described in reference to figure 1. So starting with figure 1, the very first figure, those are embodiments of Chen. There is no discussion in Chen, and the board reasonably found that there is some adaptive bit rate streaming with indexes, with blocks, with everything as background, and then I'm going to add scalability to it. That's not the way Chen describes it. It's true that Chen's scalability discussion doesn't start until paragraph 379 Chen, but Chen, from the very beginning, the title is Scalable Blocks. In the summary of the invention, on paragraph... No, that's true. In the abstract, it's all over the place, and that's not in dispute in front of us. Everything that Chen says he's invented includes scalability. Right, but I want to highlight, paragraph 27, index 5435, the files or data elements are organized as blocks and the system is configured to provide and consume scalable blocks. So this system started from figure 1, not as a background. Everything described in Chen is a block-based system, and those blocks inherently by nature are scalable, which is what the board found, and that is a factual finding. Their expert didn't oppose it. Our expert opined on it, so it should be affirmed based on substantial evidence. So that's the fundamental disagreement. Petitioner points out, argues, that there is this discussion in Chen from the beginning to paragraph 370 before scalability discussed. Everything there is an adaptive bit rate streaming without scalability, and then Chen adds scalability starting in paragraph 370. That's the way they're with Chen. The board rejected that, and that rejection is a factual determination, which is supported by substantial evidence. Are there any questions I may be able to answer? Because I believe I have exceeded my time. Thank you very much. Mr. Fleming. Thank you, Your Honor. The board actually recognizes on page 10 of its decision that Chen does disclose an adaptive bit rate streaming teaching that does not have scalable layers. If you look at the summary of Chen on page 10, they cite paragraphs 63 and 64 and quote them, which are the materials that we cited from our petition, from Dr. McDaniel's declaration all the way along. Chen details that video may be, quote, encoded at multiple bit rates to form different versions or representations, close quote, and those representations are broken into smaller pieces, perhaps on the order of a few seconds each, to form segments, with each segment stored as a separate file. As a client device requests segments, it switches to different data rates based on available bandwidth. That is adaptive bit rate streaming as it was known in the prior art. There is no scalability discussion there. Chen goes on to add scalability, and that's what it claims at the very end of its 554 paragraph application. There are two claims at the end, both of which involve scalable layers. It is true, and for purposes of this appeal, we do not dispute that the board found that there are no embodiments of the claimed invention in Chen that don't involve scalability. Now, we disagree with that on the merits, but that's neither here nor there for purposes of this discussion because even if that is true, that the embodiments of Chen's claimed invention all involve scalability, that does not exhaust everything else that Chen teaches. Chen is also relevant as a description of how far the prior art had come at that time on which Chen was trying to improve. Judge Reyna, to your question about efficiency. Of course, what the board found was a purported problem with efficiency compared, again, to Chen's claimed invention. That was not the motivation to combine that we were advancing, nor was it the reasonable expectation of success. We were comparing it to prior art adaptive bit rate streaming, which, again, the board recognized was the nature of the combination we were trying to put forward. On page A22, I'll point out at the bottom, there's a discussion of petitioner's assertions that the petition need consider only the very basic adaptive bit rate streaming aspects. That is what we were talking about, and combining Lindahl with basic adaptive bit rate streaming would certainly improve efficiency because instead of having to encrypt the entire picture, you're just encrypting part of it, which means you'd only have to decrypt part of it. You don't need as much computation. It can be done on a battery-operated smartphone or tablet. It didn't need something that was on a big computer or television. That's the improvement that Lindahl offered to adaptive bit rate streaming as basically disclosed in the beginning of Chen, completely apart from scalability. It is certainly the case, and I don't think this is disputed, that Lindahl would serve the purpose of fighting piracy because, once again, let's remember, and the board recognizes this as well, Chen itself does not call for any particular type of digital rights management. It alludes to it at various points, but it doesn't say you need to use it. Lindahl provided a way of doing it that was more efficient. The fact that Chen then went on to disclose scalability, which said here's another way to be more efficient, doesn't mean that it would somehow teach away or discourage using Lindahl's different way of improving efficiency. Allied erecting is recognized, and this court recognizes in plenty of other cases that a combination may have various advantages or disadvantages. That doesn't dispel reasonable expectation of success. It certainly doesn't dispel a motivation to combine either, had there even been such a finding, which we don't think the board made. Unless the court has further questions, we respectfully submit that the court should reverse on reasonable expectation of success, or at the very least vacate and revoke. Thank you. Thanks to both counsel. The case is taken under submission. That concludes this panel's arguments for today.